# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |

| | |
|---|---|
| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |

Present: The Honorable    James V. Selna

| | |
|---|---|
| Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS)  Order re Claim Construction and
Order Denying as Moot Plaintiffs' HID Global Corp., Assa Abloy AB,
and Destron Fearing Corp. Motion for Leave to Amend Proposed
Construction of One Term in Joint Claim Construction and Prehearing
Statement  (fld 10-17-11)

Plaintiffs HID Global Corporation, ASSA Abloy AB, and Destron Fearing
Corporation (collectively "HID Global") and Farpointe Data, Inc. and DOES 1 through
10 (collectively "Farpointe") have submitted to the Court proposed claim constructions
for certain language contained in HID Global's U.S. Patent No. 5,952,935, entitled
"Reprogrammable Channel Search Reader" (the "935 Patent"), and U.S. Patent No.
7,439,862, entitled "Antenna Array For an RFID Reader Compatible With Transponders
Operating At Different Carrier Frequencies" (the "862 Patent").  (Pls.' Opening Claim
Constr. Br. ("Pls.' Opening Br.") 1, Docket No. 29.)  The Court has considered the
parties' briefs and construes the relevant claim language below.[1]

## I.    Legal Standard

It is well settled that claim construction is "exclusively within the province of the
court."  Markman v. Western Instruments, Inc., 517 U.S. 370, 372 (1996). Such
construction "begins and ends" with the claim language itself, Interactive Gift Express,
Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001), but extrinsic evidence
may also be consulted "if needed to assist in determining the meaning or scope of

---

[1] HID Global made evidentiary objections to the Declaration
of Jack Goldberg ("Goldberg Declaration") filed in support of
Farpointe's Claim Construction Reply Brief.  (Docket No. 51.)
The Court need not consider these objections, as it did not rely
on the Goldberg Declaration in construing the claims at issue.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|----------|--------------------------|------|-------------------|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|-------|-----------------------------------------------------------|

technical terms in the claims," <u>Pall Corp. v. Micron Separations, Inc.</u>, 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted).  Further, this ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Id.</u> at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." <u>Id.</u>

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  In such circumstances general purpose dictionaries may be helpful." <u>Id.</u> at 1314.  In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." <u>Id.</u>  In those cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." <u>Id.</u>  These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." <u>Id.</u> (internal quotation marks omitted).

However, it is improper to read limitations from the specification into the claim. <u>Callicrate v. Wadsworth Mfg., Inc.</u>, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("'[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.'"  (quoting <u>Phillips</u>, 415 F.3d at 1312)).  "We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, <u>even when a specification describes very specific embodiments of the invention</u> or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" <u>JVW Enterprises, Inc. v. Interact Accessories, Inc.</u>, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

omitted) (emphasis supplied).

III.   Discussion

A.   The '935 Patent

The '935 patent discloses a programmable radio frequency identification ("RFID") reader (or "interrogator") capable of reading identification signals from transponders "that use different frequencies, different methods of modulation, and/or different methods of encoding to communicate with the reader."  (Pls.' Opening Br. 4.)  The invention's purpose is to provide a reader that can "communicate with transponders that use different communication protocols."  (Id.)  HID Global alleges that Farpointe infringes the '935 patent through its manufacture, use, and sale of the (1) Delta product line and (2) Pyramid Series Proximity Readers.  (Compl. ¶ 31, Docket No. 1.)

**1.   Claim 17**

HID Global alleges that Farpointe infringes claims 17, 18, and 19 in the '935 patent.  The language of claims 17 and 18 is in dispute.  Claim 17 recites:

17.  A programmable interrogator for use with a plurality of transponders attached to an article to be identified, the interrogator for transmitting an interrogation signal for interrogating one of the plurality of transponders that respond to an interrogation signal by transmitting an identification signal having different frequencies, different methods of modulation, and at least an identification component, said one of the plurality of transponders receiving said interrogation signal from the interrogator and responding to said received interrogation signal with an identification signal, said interrogator comprising:
>   an antenna assembly for transmitting the interrogation signal from the interrogators to said transponder and for receiving said identification signal from said transponder;
>   a processor for processing said identification signal received by said transponder antenna assembly and creating an output signal substantially corresponding to said identification signal; and
>   a programmer connected to said processor for programming the specific types of identification signals of the different transponders to process.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

(App. of Exs. in Support of Pls.' Opening Br., Ex. 1 at 18.)  The parties dispute the proper construction of several terms in claim 17 of '935 patent.  The Court will address each disputed term in turn, bolding the language the parties seek the Court to construe.

     a.     *"A **programmable interrogator** for use with a plurality of transponders attached to an article to be identified,"*

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| an interrogator capable of being reprogrammed on site by reprogramming the interrogator software | A reader based on a software program that is capable of transmitting an interrogation signal for interrogating one of a plurality of transponders that respond to an interrogation signal by transmitting an identification signal.  The identification signal for each of the plurality of transponder has different frequencies, different methods of modulation, and different encoding from each other and at least an identification component. |

     Farpointe proposes that the Court construe "programmable interrogator" as "a reader based on a software program" because "it is commonly understood that a 'programmable' device . . . has functions that are dictated by software and because the specification describes many of the functions of the reader or interrogator performed as directed by software." (Defs.' Opening Br. 5, Docket No. 33.)  For example, the specification states that the microprocessor 52 within the reader is operated by "a software program."  (Id. at 4; '935 patent, col. 8:10-17, 4-6.[2])  Farpointe notes that the specification also indicates that the reader "is capable of being programmed on site by reprogramming the operating instructions for the microprocessor which are stored in the EEPROM 74." ('935 patent, col. 11:24-27.)  Farpointe suggests

       [2] The '935 patent is located in the Appendix of Exhibits in Support of Plaintiffs' Opening Brief, Exhibit 1 (Docket No. 32-1), as well as the Declaration of Gregory P. O'Hara, Exhibit 1 (Docket No. 34-1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

that because the operating instructions consist of a software program and the specification states that the reader can be programmed through the "operating instructions," it follows that the reader or interrogator is "programmable" via a software program.  (See Defs.' Opening Br. 5.)

"A reader based on a software program," however, imputes vagueness to a term that is relatively clear to begin with.  Moreover, the phrase "based on a software program" does not capture the primary characteristic of the "programmable interrogator," which is the fact that the interrogator can be reprogrammed.  Though Farpointe argues that its proposed definition indicates that the reader can be programmed using software, the terminology it proposes does not clearly indicate that quality.  The specification highlights the fact that "the reader is capable of being reprogrammed on site,"and explains that it is reprogrammed through the operating instructions for the microprocessor that are stored in the EEPROM 74.  (Id. at p. 17, col. 11:23-28) (emphasis supplied).  Both parties seem to agree that the "operating instructions for the microprocessor" is the interrogator or reader software used to reprogram the reader.  (Defs.' Opening Br. 5; Pls.' Opening Br. 2.)  Thus, it is clear that a "programmable interrogator" is an "interrogator capable of being reprogrammed on site by reprogramming the interrogator software," in accordance with HID Global's proposed construction.

Farpointe contends that the second sentence in its proposed definition, relating to the identification signals for the various transponders, is necessary for interpreting "programmable interrogator" because it describes the functions carried out by the microprocessor pursuant to the software program.  (Defs.' Reply Br. 2.)  However, the interaction of the interrogation signal with the various transponders relates to the next term that the parties ask the Court to construe, discussed infra section A.1(b).  The Court finds that is confusing and duplicative to include the function of the identification signals and the transponders in the construction of the "programmable interrogator," as the term can be defined independently of the interrogation signal and transponders, and the Court interprets those terms separately.

Accordingly, the Court adopt's HID Global's proposed construction of "programmable interrogator."

b.     *"the interrogator for transmitting an interrogation signal for interrogating*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                    Date   November 17, 2011

Title        HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

*one of the plurality of transponders that respond to an interrogation signal
by **transmitting an identification signal having different frequencies,
different methods of modulation, and at least an identification
component,***"

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| transmitting an identification signal that (a) uses a frequency or frequencies distinct from the interrogation signal and a method or methods of modulation (defined as a method of changing the amplitude, frequency, and/or phase of the interrogation[3] signal) that are different from those used by another of the plurality of transponders, and (b) has at least an identification component | Multiple transponders transmit an identification signal that has a different transmission frequency as well as a different method of modulation from each other with an encoded identification component in response to a single interrogation signal from the interrogator. Modulation methods include methods such as amplitude or load modulation ("AM") and are distinct from encoding methods such as FSK, PSK, Manchester, NRZ or BP. |

From the proposed constructions, it appears as though there is a dispute as to whether the term "different frequencies" (1) requires that each transponder transmit a unique identification signal in that the signal differs in frequency and method of modulation from every other transponder, as proposed by Farpointe; or (2) requires only

---

[3] The Court denies HID Global's Motion for Leave to Amended Proposed Construction of One Term in Joint Claim Construction (Docket No. 37) as moot, because the Court adopts HID Global's original claim construction. The Court agrees with Farpointe that there is no intrinsic evidence supporting the "carrier signal" construction. (Defs.' Reply Br. 5.) Further, claim 17 refers to the signal as an "interrogation signal," which is the term consistently used throughout the specification. The Court sees no reason to construe a term that is well-defined in the specification or replace it with a word that has no context in the patent. Accordingly, any reference to HID Global's construction refers to the construction containing the phrase "phase of the interrogation signal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

that the transponder transmit an identification signal distinct from the interrogation signal, as proposed by HID Global.  In other words, the proposed constructions suggest that there is a debate as to whether the referent for "different frequencies" is "transponder identification signal" or "interrogation signal."  However, from the briefs it is clear that the parties agree that the correct referent is "transponder identification signal," meaning that the claim requires that transponder signals have some variation among them.

That "different frequencies" refers to the frequencies of the transponder identification signals also has intrinsic support.  For example, Table 2 of the '935 patent lists the frequencies of the various transponder signals and their corresponding manufacturers.  ('935 patent, Table 2.)  Furthermore, the specification describes how a frequency discriminator determines the frequency of each transponder signal by measuring one cycle of the squared-off signal, which in turn identifies the manufacturer of the transponder.  Then, the transponder signal is converted into an identification number to display the tag identification data showing a software program.  That transponder signals derive their unique identity in part from variations in frequency suggests that the "different frequencies" relates to the different frequencies between the transponder signals and not the different frequencies between a particular transponder signal and an interrogation signal.  Furthermore, the '935 patent specification states that this invention seeks to address the problem with a reader capable of reading only one type of transponder signal:

> However, the veterinarian is unable to read the transponders with a single transceiver, because each manufacturer has designed a different technology, using different (a) methods of modulation, (b) frequencies, and/or (c) methods of encoding with which to output the transponder identification number.

('935 patent, col. 3:42-47.)  Claim 17 describes the invention that addresses this problem and streamlines the transponder reading process: an interrogator that communicates with various transponders created by different manufacturers, which operate on different frequencies and employ different methods of modulation.  Accordingly, it is clear from the extrinsic evidence, and undisputed by the parties, that "different frequencies" refers to the differing frequencies of the transponders.

HID Global objects to Farpointe's proposed construction to the extent that it suggests that every transponder "must use a different frequency and a different method of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                    Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

modulation from every single other transponder used with the interrogator." (Pls.' Opening Br. 8.) Both parties agree that this interpretation of the claim language would be incorrect, as the objective of the invention is to have an interrogator that reads a multitude of transponders–not one of each transponder utilizing a distinct frequency and modulation method. (Id.; Defs.' Reply Br. 4.) While Farpointe contends that its proposed construction does not make such an implication, the Court adopts a construction that obviates any ambiguity in Farpointe's proposed construction, to the extent it exists. The construction will read in part: "a signal that (a) uses a frequency or frequencies and a method or methods of modulation . . . that are different from those used by another of a plurality of transponders." The Court's construction comports with the specification and the understanding of both parties. It accurately reflects the scope of the claim and does not suggest that each transponder signal must be different from every other transponder signal.

Also at issue is the scope of the "methods of modulation." Farpointe argues that because "methods of modulation" is not explicitly defined in the patent and the patent does not describe what is meant by the term, the Court should deduce from the fact that Table 1 separates columns for "(1) Modulation, (2) Bit Encoding, and (3) Data Encoding" that bit encoding methods, such as "frequency shift keying" ("FSK") and "phase shift keying" ("PSK"), and data encoding methods, such as Manchester, "no-return-to-zero" ("NRZ"), and "biphase" ("BP") are not "methods of modulation." (Defs.' Opening Br. 8.) Farpointe insists that if the patentee intended to include FSK, PSK, Manchester, and NRZ in "methods of modulation," he would have included them under the headings in Table 1 labeled as such. (Id.) However, there is no evidence that the headings in Table 1 correspond to or inform the terms in claim 17.

Furthermore, there is substantial evidence that these encoding methods are within the definition of "methods of modulation" for purposes of interpreting the claim. First, "modulation" is understood by those of skill in the art to refer to "altering the signal parameters of a high frequency carrier, i.e. its amplitude, frequency or phase, in relation to a modulated signal, the baseband signal." KLAUS FINKENZELLER, RFID HANDBOOK (Rachel Waddington trans., John Wiley & Sons, Ltd. 2d. Ed. 2003) (App. of Exs. in Support of Pls.' Opening Br., Ex. 4.); (Mihran Decl. ¶¶ 63-64). Webster's Encyclopedic Unabridged Dictionary of the English Language defines "modulate" in the context of "radio" as "to cause the amplitude, frequency, phase, or intensity of (a carrier wave) to vary in accordance with a sound wave or other signal . . . ." (1989) (App. of Exs. in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. | | |

Support of Pls.' Opening Br., Ex. 5.)  Moreover, those skilled in the art consider FSK and PSK to be types of modulation.  See RFID HANDBOOK, supra, at 189 (describing FSK in the chapter discussing "Digital Modulation Procedures") (App. of Exs. in Support of Pls.' Opening Br. Ex. 10, p. 237); RFID HANDBOOK, supra, at 191 (describing "PSK modulation by the inversion of a sinusodial carrier signal in time with a binary code signal") (App. of Exs. in Support of Pls.' Opening Br. Ex. 11, p. 240).[4]  Farpointe urges the Court to discount the ordinary meaning of these terms because the patentee, acting as his own lexicographer, decided to use different terms to describe the methods of modulation and the methods of encoding, thus assigning them different meanings.  (See Defs.' Reply Br. 8.)  The Court, however, is not convinced that the patentee took the encoding methodologies out of their ordinary meaning and into patent-specific definitions simply because he placed "encoding" and "modulation" methods in different columns in a table that does not necessarily correspond to claim 17.  Just as a single embodiment is not necessarily preclusive, the same is true with respect to a partial listing of modulation methods.

Second, Farpointe's limitations on the "methods of modulation" are inconsistent with the '935 patent prosecution, during which the applicants referred to Manchester, NRZ, and BP as examples of "methods of modulation."  Responding to a question about a prior art entitled "Marsh," the applicant distinguished the '935 patent by asserting that his invention, unlike Marsh, has an interrogator capable of reading transponder signals "that are modulated using different modulation methods (such as Manchester, no-return-to-zero, Biphase, or Modified Biphase)," thus showing that the patentee intended those encoding techniques to be examples of "methods of modulation."  (Patent Application, App. of Exs. in Support of Pls.' Opening Br., Ex. 3, p. 149.)

Accordingly, it is clear from claim 17, the ordinary meaning of "modulation," the understanding of "modulation" by people skilled in the art, the specification, and the patent prosecution that the "methods of modulation" should not be construed to exclude the encoding methods.

The Court adopts the following construction for the term at issue:

---

[4] Indeed, Farpointe appears to agree that PSK and FSK are "methods of modulation," as it discusses systems using "PSK and FSK modulation" in its patents for the accused infringing products.  (Ex. 15, p. 263, col. 1:51-62; Ex. 16, p. 280, col. 2: 2-12.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |

**a signal that (a) uses a frequency or frequencies and a method or methods of modulation (defined as a method of changing the amplitude, frequency, and/or phase of an interrogation signal) that are different from those used by another of a plurality of transponders and (b) has at least an identification component**

This construction comports with the ordinary meaning of the terms as well as the understanding of those skilled in the art.  The construction is in accord with the specification and patent prosecution.

c. *"**a processor for processing said identification signal** received by said transponder antenna assembly **and creating an output signal substantially corresponding to said identification component of said identification signal**; and"*

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| Plaintiffs believe "a processor for processing said identification signal" does not require construction.<br><br>Plaintiffs' proposed construction of "and creating an output signal substantially corresponding to said identification signal" is: "converting the identification signal into an identification number substantially corresponding to said identification component of said identification signal" | The processor is a complete integrated circuit such as the microprocessor 52.  A processor is a single integrated circuit including a control unit, an arithmetic and logic unit (ALU) and memory (registers, cache, RAM and ROM) as well as various temporary buffers and other logic that uses instructions to perform calculations or other manipulations of data for the purpose of processing the identification signal and creating an output that is the same as the identification data of the identification signal. |

Farpointe attempts to limit the scope of the term "processor for processing said identification signal" by construing the term to require that the processor is "a complete integrated circuit."  To support this construction, Farpointe relies on one preferred embodiment of the patent.  (Defs.' Opening Br. 12, 13; '935 patent, p. 7, Fig. 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

However, it is well-established law that "the interpretative process may not import limitations from the specification into the defining language of the claims."  Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1357 (Fed. Cir. 2002).  Thus, a use of the processor in an embodiment cannot import limitations on the language of claim 17.

Furthermore, Farpointe relies on an online computer dictionary definition to construe "processor" to require "an arithmetic and logic unit (ALU) and memory (registers, cache, RAM and ROM) as well as various temporary buffers and other logic." (Defs.' Opening Br. 14.)  However, the online dictionary Farpointe cites does not even have a definition of "processor"; rather, the definition Farpointe cites is for "central processing unit," which is the hyperlink that appears when one searches "processor" on the online dictionary.  Farpointe contends that the computer dictionary definition states that "central processing unit" and "processor" are "synonymous"; however, the definition actually states that "[t]he term 'processor' has to some extent replaced 'CPU,' though RAM and ROM are not normally considered as part of a processor."  (Farpointe Reply Br. 15; COMPUTER DICTIONARY ONLINE, http://www.computer-dictionary-online.org/indx.asp?q=processor (last visited Nov. 8, 2011) (emphasis supplied).)  Thus, the authority Farpointe propounds in support of its construction actually undermines its construction, given that Farpointe suggests that "processors" require memory such as "RAM and ROM," while the computer definition states that "RAM and ROM are not normally consider as part of the processor."  Accordingly, the Court declines to adopt Farpointe's construction.

The Court finds that "a processor for processing said identification signal" is sufficiently clear and does not require construction.  The Court need not construe simple, unambiguous terms.  E.g., O2 Micro Int'l v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008).

Turning to the second term in the element–"and creating an output signal substantially corresponding to said identification component of said identification signal"–the Court finds that HID Global's proposed construction comports with the plain meaning of the terms and is consistent with the specification.  HID Global's construction tracks the process described in the specification, in which the frequency discriminator determines the frequency of each transponder signal to identify the manufacturer of the transponder.  Then, the signal is "operated upon by software to convert the transponder signal into an identification number to display the tag identification data." ('935 patent,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |

| | |
|---|---|
| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |

col. 8:7-17.)  HID Global's proposed construction highlights the fact that a transponder's identification signal is "converted" into an identification number, akin to the description of the process in the specification.  Further, HID Global's construction takes into account that the identification number "substantially correspond[s]" to the identification component of the transponder signal, which is consistent with the plain language of the claim, which states that the "output signal substantially correspond[s] to said identification component of said identification signal."  In contrast, Farpointe's proposed construction is somewhat inaccurate because it requires that the identification signal create an output "that is the same as the identification data of the identification signal," while the claim requires only a substantial correspondence between the two.

Accordingly, the Court does not construe "a processor for processing said identification signal," and adopts HID Global's proposed construction for "and creating an output signal substantially corresponding to said identification component of said identification signal."

      d.     ***"a programmer connected to said processor for programming the specific types of identification signals of the different transponders to process"***

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| HID Global believes this language does not require construction. | The programmer is a separate memory device from any internal memory on the processor that stores operating instructions that are loaded under the instruction of a boot load function stored on internal memory on the processor.  The operating instructions define how to process the specific types of identification signals of different transponders operating at different frequencies and different modulations but exclude configuration setting commands. |

Farpointe attempts to constrict the meaning of "programmer" by importing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

limitations from the specification and relying on extrinsic evidence, as it did with the definition of "processor."  The Court again finds these limitations improper.  For example, Farpointe's definition requires that the operating instructions "are loaded under the instruction of a boot load function" because the description of "programming" mentioned in the specification required a boot load function; however, this is precisely the type of limitation the Court cannot read into the claim.  "If we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop."  Phillips, 415 F.3d at 1312.  Farpointe has done just that.  Inexplicably, Farpointe also adds limitations for which it offers no support: "The operating instructions define how to process the specific types of identification signals of different transponders operating at different frequencies and different modulations but exclude configuration setting commands."  This limitation is not even addressed in Farpointe's briefing.

Moreover, the Court finds that the term is sufficiently clear and does not require construction.  While Farpointe contends that it is "impossible to determine the scope of" the term "programmer"(Defs.' Reply Br. 15), the Court finds that the context in claim 17 significantly limits the scope of the term and makes its definition self-evident.[5]  The claim makes clear that the "programmer" is connected to the processor "for programming the specific types of identification signals of the different transponders to process."

Accordingly, the Court declines to construe the terms in this portion of the claim.

2.    **Claim 18**

HID Global also alleges that Farpointe infringes claim 18 of the '935 patent.  The parties dispute the proper construction of the bolded portion of claim 18:

*18.  The programmable interrogator of claim 17, wherein said programmer includes an EEPROM coupled to a microprocessor, **said EEPROM being***

---

[5]  Farpointe argues that the ordinary meaning of the word "programmer" is a person who writes programs; however, that definition is clearly inapplicable in the context of this patent and not likely to cause confusion given that the claim states that the "programmer" is "connected" to the processor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)          Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

*programmed by an external computer.*

('935 patent, col. 14:59-62.)

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
| --- | --- |
| said EEPROM programmed by a computer external to the programmable interrogator | The programmer is an EEPROM and a microprocessor, both of which must be separate from the processor and programmed by a boot load function through a serial programming port. |

Here, Farpointe again attempts to weave in limitations and insert excess verbiage to define terms that require little additional construction.  Farpointe interprets the claim language "programmer <u>includes</u> an EEPROM <u>coupled to</u> a microprocessor" to mean "programmer <u>is</u> an EEPROM <u>and</u> a microprocessor" (emphasis supplied).  This reading is plainly at odds with the language of the claim.  Furthermore, the claim neither makes any mention of the "processor" nor suggests that the programmer "must be separate from the processor."  Finally, as discussed in the analysis of claim 17, the limitation that the programmer must be programmed "by a boot load function" is improperly imported from a discussion of an embodiment in the specification.

HID Global's construction slightly modifying the language of the claim comports with the ordinary meaning of the claim language as well as the specification.  The HID Global proposed construction varies from the claim language only in that it clarifies that the "external computer" in the claim term is a "computer external to the programmable interrogator."  The Court finds that this is an appropriate construction of the claim term.

Accordingly, the Court adopts HID Global's proposed construction for this term.

B.   The <u>'862</u> Patent

The '862 patent generally discloses an RFID reader that includes "at least two reader antennas that operate at different carrier frequencies," arranged "in a configuration that optimizes performance of the RFID system, while maintaining a compact size."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

(Pls.' Opening Br. 18.)  The invention aims to provide "a solution that allows both of these antennas to be operated in close proximity while minimizing the inference between the two antennas."  (_Id._)  HID Global alleges that Farpointe infringes the '862 patent through its manufacture, use, and sale of the Delta product line.  (Compl. ¶ 26.)

The disputed terms in the '862 patent primarily relate to the different arrangements of two antennas used to receive radio frequency signals at different frequencies.  (Defs.' Opening Br. 18.)  The parties dispute the following terms in the '862 patent, some of which arise in more than one claim.  The Court addresses each disputed term in turn and indicates in which claim or claims the term appears.

1. *"first and second antenna are oriented along axes that are substantially parallel to one another"* (Claims 1 and 14)

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| the first and second antennas are oriented along longitudinal axes substantially equidistant from each other | The two antenna each have an axis of orientation that are separated from each other and do not intersect.  As shown in the Figs. 2-6, the axis for each antenna are in the x-y plane defined by the antenna loop. |

The parties dispute the direction of the axes referred to this claim term, which appears in claims 1 and 14.  Farpointe asserts that "[a]s shown in the Figs. 2-6, the axis for each antenna are in the x-y plane defined by the antenna loop."  To support this proposed construction, Farpointe cites language in the specification that describes Figures 2A and 2B in an arrangement where "[t]he reader antennas 34, 38 have a fixed non-contacting parallel orientation . . . ," which Farpointe contends "is similar for Figs. 3-6." (Defs.' Opening Br. 19; '862 patent[6], col. 11:47-50.)  Farpointe asserts, "[a]s may be seen by Figs. 2-6, the antennas 34 and 38 are on parallel planes that are separated from each

_____

[6] The '862 patent is located in the Appendix of Exhibits in Support of Plaintiffs' Opening Brief, Exhibit 20, as well as the Declaration of Gregory P. O'Hara, Exhibit 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

other and do not intersect." (Defs.' Opening Br. 19.)  Further, Farpointe submits that
because the figures in the '862 patent are examples of the construction, they should be
included in the interpretation of the claim. (Defs.' Opening Br. 19.)

Farpointe's analysis, however, ignores the perpendicular orientation of the planes
created by the antenna loops in Figure 5.  Figure 5 does not support Farpointe's proposed
construction because there "the reader antennas have a fixed non-contacting
perpendicular orientation . . . the reader antennas are mounted side-by-side, but at right
angles to one another." ('862 patent, 13:39-43.)  Thus, in Figure 5, the readers are not
fixed in a "parallel orientation," as Farpointe suggests, but rather in a "perpendicular
orientation . . . at right angles of one another."  Farpointe counters that the specification
indicates all the embodiments (Figs. 2-6) "are parallel," and thus Figures 2-6 support its
proposed construction (Defs.' Reply Br. 19); however, the specification does not indicate
that all embodiments in a parallel orientation ('862 patent, col 10:25-27).  In fact, the
specification states that the reader antennas in Figure 1 are "arranged in parallel adjacent
to one another," but the other embodiments (Figs. 2-6) are in "<u>alternate</u>" arrangements,
thus suggesting that not all the reader antennas in the Figures are in a parallel orientation.
Further, it is clear from Figure 5 that not all embodiments are in a "parallel orientation."
The Court cannot adopt a construction with internal inconsistencies or a construction that
incorporates an embodiment, namely, Figure 5, that contradicts the plain understanding
of the claim language.

HID Global's construction defining the axis of orientation as the "longitudinal
axis" comports with the plain meaning of the terms in the claim, as well as the
specification.  The longitudinal axis is the axis that is perpendicular to the plane defined
by the antenna loop.[7]  Thus, according to HID Global, the antennas are oriented along
substantially equidistant axes perpendicular to the plane defined by the loop antenna.
Because claims 1 and 14 disclose antenna configurations in which the antennas are
"substantially parallel," only the embodiments in parallel orientations–Figures 1, 2, 3, 4,

---

[7] Farpointe argues that HID Global's construction "is
ambiguous because it does not provide a reference as to what the
axes are perpendicular to," but this is inaccurate because, by
definition, the "longitudinal" axis is the axis that is
perpendicular to the plane that is defined by the antenna loop.
(Defs.' Reply Br. 18, n. 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

and 6–are helpful for construing this term.[8] The reader antennas in these figures with "parallel orientations" appear to be oriented along longitudinal axes. Thus, the phrase "longitudinal axes" in HID Global's proposed construction comports with the relevant portion of the specification.

The parties are generally in agreement as to the dictionary definition of "parallel." HID defines parallel as "[a] state or condition in which there is an equal distance at all points. For example, two infinitely long straight lines which do not intersect . . . ." (Joint Claim Constr. Ex. B, p. 2 (citing S.M. Kaplan "Parallel," Wiley Electrical and Electronics Engineering Dictionary, John Wiley & Sons, Inc. Hoboken, N.J., 2004, p. 551).) Farpointe proposes a substantially similar definition: "1. being an equal distance [a]part at every point . . . 2.a. [d]esignating two or more straight co-planar lines that do not intersect." (Id. (citing Webster's II New College Dictionary, 1995, p. 796).) HID Global proposes that the construction state that the axes are "substantially equidistant" from each other, while Farpointe proposes that the construction state that the axes "are separated from each other and do not intersect." The Court adopts HID Global's construction because the claim language states that the antennas are "<u>substantially</u> parallel," akin to HID Global's construction, not precisely "parallel," as suggested by Farpointe's construction.

Accordingly, the Court adopts HID Global's proposed construction for these terms.

---

   [8] Farpointe argues that the Court should ignore the physical arrangement of Figure 1 because the specification states that Figure 1 "is merely a schematic block diagram of the RFID reader 14, wherein the individual elements are depicted conceptually." (Defs.' Reply Br. 19 (citing the '862 patent).) However, this language is not at that citation and the Court did not find any language to that effect in the specification. The specification notes that the reader antennas in Figure 1 are "arranged in parallel adjacent" to one another and that "alternate, more specific arrangements" are depicted in the other figures; however, this does not suggest that Figure 1 is "merely a schematic block" where the physical arrangement should be discounted. The Court finds that the physical arrangement in Figure 1 is helpful to discerning the meaning of "parallel" in claims 1 and 14 because the specification notes that the reader antennas are "parallel" in Figure 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

2. *"first and second antennas are arranged in at least a partially overlapping arrangement on proximate adjacent planes"* (Claims 5 and 17[9])

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| the first and second antennas arranged so that one antenna may be brought into contact with the other antenna at some point of rotation if one (or both) antenna (antennas) were rotated about its (their) respective center (centers) of mass, the antennas contained within respective planes before rotation in their fixed positions that are near, close, or contiguous | The coil of the antennas are mounted in such a way that the loops formed by one of the reader antennas could be brought into contact with the loop formed by the other reader antenna at some point of rotation if the reader antenna were to be rotated from its fixed position about its center of mass.  The overlapping arrangement also includes the case where the loops of the antennas could be brought into contact with one another at some point of rotation if both fixably mounted reader antennas were to be rotated from their respective fixed positions about their respective centers of mass.  The center of mass must be within the loop formed by the antenna, the rotation may occur at any axis that intersects the center of mass. The loops formed by the antennas define planes that are separated from each other such as that shown in Figs. 4-6. |

The parties do not dispute the construction of "a partially overlapping

---

[9] HID Global notes that the claim language in claims 5 and 17 is slightly different.  Claim 5 includes "on proximate adjacent planes" and claim 17 includes "along proximate adjacent planes."  ('862 patent, col 15: 55-56, col. 16:67.)  HID Global submits that this difference is insignificant for purposes of construing the claims.  Farpointe has not objected to construing this language together.  The Court also finds the slight differences to be immaterial to construing the claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

arrangement."  (See Defs.' Opening Br. 21; Pls.' Opening Br. 21.)  Both proposed constructions rely on the same portion of the specification, and they are not substantively different.  (See Defs.' Opening Br. 21; Pls.' Opening Br. 21.)

The contested claim term is "proximate adjacent planes."  Interpreting this term, Farpointe again imports limitations from the specification and submits that the loops formed by the antennas have to be on "separated" planes.  Farpointe supports its contention by suggesting that the drawings in Figures 4, 5, and 6 "describe the 'proximate adjacent planes' as part of the 'overlapping arrangement.'" (Defs.' Opening Br. 21.)  Thus, Farpointe concludes, the loops "define planes that are separated from each other." (Id.)  However, it is unclear whether the Figures cited "describe" the proximate adjacent planes as part of the overlapping arrangement.  There is no language to this effect in the specification and such a conclusion is not evident from the Figures.  Even if it were, it does not necessarily follow that the planes are "separated from each other."  The configurations in Figures 4, 5, and 6 cannot limit the universe of configurations contemplated by the claim.

The dictionary definition of "adjacent" submitted by HID Global is "lying near, close, or contiguous, adjoining, neighboring," which is consistent, though more expansive than the definition submitted by Farpointe, which is "close to; lying near." (Joint Claim Constr., p. 6.)  The Court finds that HID Global's definition is more appropriate because the plain meaning of "adjacent" includes "touching," and the claim language on its face provides for the possibility of contact between the planes.

HID Global's construction clearly and concisely construes the claim, relying on a description in the specification that both parties agree is the applicable reference, as well as the dictionary definition of adjacent, which comports with the plain meaning of the term.  Accordingly, the Court adopts HID Global's construction of this term.

3.    *"first and second antennas are arranged in an opposing magnetic flux arrangement"* (Claim 9)

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)                    Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

| | |
|---|---|
| arrangement where the magnetic flux generated by one reader antenna passes through the other reader antenna in an opposing manner (i.e., both positive and negative magnetic flux from one reader antenna passes through the other reader antenna) | The antennas must be fixably mounted in non-contacting or contacting in an asymmetric or an overlapping relation to one another and on separate planes such as the arrangements shown in Figs. 3A-3B and 6A-6B.  Significant magnetic flux generated by one reader antenna passes through the other reader antenna so both positive and negative magnetic flux from one reader antenna passes through the other reader antenna such that the positive and negative fluxes from the one reader antenna cancel out summing to essentially zero resulting in essentially no self resonance effect on the other reader antenna.  Positive magnetic flux is magnetic flux which induces a positive voltage across an antenna coil and negative magnetic flux is magnetic flux which induces negative voltage across an antenna coil. |

The parties have the same general understanding of a "opposing magnetic flux arrangement"; however, Farpointe again reads improper limitations from the specification into the claim.  First, Farpointe contends that the antennas "must be fixably mounted in non-contacting or contacting in an asymmetric or an overlapping relation to one another and on separate planes such as the arrangements shown in Figs. 3A-3B and 6A-6B."  This limitation, however, is improper because it seeks to narrow the scope of possible arrangements the embodiments in two of the six figures provided with this patent.  Nothing in the claim language forecloses the possibility that the magnetic flux arrangement can be achieved by means other than "fixable mounting" or suggests that the configurations are limited to the embodiments in Figures 3 and 6.

Second, Farpointe's construction requires that "[s]ignificant magnetic flux generated by one reader antenna passes through the other reader antenna so both positive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)          Date   November 17, 2011

Title      HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

and negative magnetic flux from one reader antenna passes through the other reader antenna such that the positive and negative fluxes from the one reader antenna <u>cancel out summing to essentially zero</u> resulting in essentially no self resonance effect on the other reader antenna."  (emphasis added.)  Farpointe derives this language from the specification section describing the embodiment in Figure 6, in which high and low reader frequency "cancel out in their entirety."  ('862 patent, col. 14:14-30.)  Aside from the problem that Farpointe changed  "cancel out <u>essentially</u> in their entirety" to "cancel out," thereby eliminating the express qualification in the claim, this interpretation imposes another improper limitation on the claim derived from the specification.  Moreover, another part of the specification expressly forecloses this limitation on the claim, stating, "[i]t is noted that the opposing magnetic flux arrangement <u>does not require</u> the positive and negative magnetic fluxes to be of equal magnitude." ('862, col. 12:30-32) (emphasis supplied).

     Both HID Global and Farpointe rely on the following portion of the specification describing the "opposing magnetic flux arrangement": "In accordance with the opposing magnetic flux arrangement, the two reader antennas, 34, 38 are fixably mounted . . . such that significant magnetic flux generated by one reader antenna 34 or 38 passes through the other reader antenna 38 or 34 in an opposing manner (i.e., both positive and negative magnetic flux from one reader antenna 34 or 38 passes through the other reader antenna 38 or 34)."  ('862 patent, col 12:18-26.)  HID Global's proposed construction properly interprets this portion of the specification in light of the claim language and does not expand or limit the perimeters of the claim.  Farpointe's construction includes helpful definitions for positive and negative magnetic flux that are in accordance with the specification and the claim language.  Thus, the Court adopts elements of both proposed constructions and interprets the claim language as follows:

> **arrangement where the magnetic flux generated by one reader antenna passes through the other reader antenna in an opposing manner (i.e., both positive and negative magnetic flux from one reader antenna passes through the other reader antenna); positive magnetic flux is magnetic flux which induces a positive voltage across an antenna coil and negative magnetic flux is magnetic flux which induces negative voltage across an antenna coil**

This construction comports with the ordinary meaning of the terms in the claim as well as the relevant language in the specification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |

| | |
|---|---|
| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |

4.    *"said first and second reader antennas are arranged in an overlapping arrangement simultaneous with said opposing magnetic flux arrangement"* (Claim 13)

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| Same as Claims 5 and 9. | Same as Claims 5 and 9. |

The Court agrees with the parties that the term from claim 13 need not be separately construed because it discloses that the antennas are arranged in an "overlapping" and an "opposing magnetic flux" arrangement, which were addressed in the Court's analysis of claims 5 and 9.

5.    *"a portion of the first area in the first plane overlaps a portion of the second area in the second plane"* (Claim 20)

| HID Global's Proposed Construction | Farpointe's Proposed Construction |
|---|---|
| a portion of the area enclosed by the first reader loop antenna covers or is covered by a portion of the area enclosed by the second reader loop antenna as viewed along the longitudinal axis | The loops of the first and second antenna are arranged so the planes defined by the antenna loops are separated from each other and at least a portion of the area overlaps the portion of the second area. |

The parties seem to agree on the fundamental meaning of this claim, but Farpointe again imposes limitations on the claim that are not supported by the claim language. Here, Farpointe submits that the planes defined by the antenna loops must be "separated from each other"; however, this limitation is not supported by the plain language of the claim.  Again, Farpointe reads in this limitation from the specification.

HID Global's proposed construction makes clear that the "portion of the area" in the first and second planes refers to the area enclosed by the first and second reader loop, respectively.  HID Global's construction also clarifies that the "overlap" is to be viewed along the longitudinal axis, i.e. "from the vantage point of looking down on the antennas from above as they lay flat."  (Pls.' Opening Br. 24.)  These clarifications are consistent with a plain reading of the claim, and are corroborated by the specification, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-01954-JVS (AJWx) | Date | November 17, 2011 |
|---|---|---|---|

| Title | HID Global Corp., et al.  v.  Farpointe Data, Inc., et al. |
|---|---|

describes the overlap of the antennas from the perspective of looking down at them from above.

Accordingly, the Court adopts HID Global's interpretation of this claim.

IV.    Conclusion

| Disputed Claim Term | Court's Construction |
|---|---|
| programmable interrogator | an interrogator capable of being reprogrammed on site by reprogramming the interrogator software |
| transmitting an identification signal having different frequencies, different methods of modulation, and at least an identification component | a signal that (a) uses a frequency or frequencies and a method or methods of modulation (defined as a method of changing the amplitude, frequency, and/or phase of an interrogation signal) that are different from those used by another of a plurality of transponders and (b) has at least an identification component |
| a processor for processing said identification signal | (No construction needed) |
| and creating an output signal substantially corresponding to said identification component of said identification signal | converting the identification signal into an identification number substantially corresponding to said identification component of said identification signal |
| a programmer connected to said processor for programming the specific types of identification signals of the different transponders to process | (No construction needed) |
| said EEPROM being programmed by an external computer | said EEPROM programmed by a computer external to the programmable interrogator |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 10-01954-JVS (AJWx)            Date   November 17, 2011

Title   HID Global Corp., et al.  v.  Farpointe Data, Inc., et al.

| | |
|---|---|
| first and second antenna are oriented along axes that are substantially parallel to one another | the first and second antennas are oriented along longitudinal axes substantially equidistant from each other |
| first and second antennas are arranged in at least a partially overlapping arrangement on proximate adjacent planes | the first and second antennas arranged so that one antenna may be brought into contact with the other antenna at some point of rotation if one (or both) antenna (antennas) were rotated about its (their) respective center (centers) of mass, the antennas contained within respective planes before rotation in their fixed positions that are near, close, or contiguous |
| first and second antennas are arranged in an opposing magnetic flux arrangement | arrangement where the magnetic flux generated by one reader antenna passes through the other reader antenna in an opposing manner (i.e., both positive and negative magnetic flux from one reader antenna passes through the other reader antenna); positive magnetic flux is magnetic flux which induces a positive voltage across an antenna coil and negative magnetic flux is magnetic flux which induces negative voltage across an antenna coil |
| a portion of the first area in the first plane overlaps a portion of the second area in the second plane | a portion of the area enclosed by the first reader loop antenna covers or is covered by a portion of the area enclosed by the second reader loop antenna as viewed along the longitudinal axis |

IT IS SO ORDERED.

Initials of Preparer            kjt